UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KAREN LESLIEANN STEFANSKI,**

        **Plaintiff,**

**v.**                                                    **Case No:   6:15-cv-594-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Karen Leslieann Stefanski (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Doc. No. 1. Claimant argues the Administrative Law Judge (the "ALJ") erred by: 1) assigning little weight to Dr. Stephane Lavoie's opinion; 2) failing to weigh all the medical opinions of record; 3) finding her testimony concerning her pain and limitations not credible; and 4) relying on the vocational expert's ("VE") testimony in finding she can perform other jobs in the national economy.  Doc. No. 22 at 21-26, 33-34, 36-39.  Claimant argues the matter should be reversed for an award of benefits or, in the alternative, remanded for further proceedings.  *Id*. at 43.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

**I.**    **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**II.   ANALYSIS.**

**A. Dr. Lavoie's Opinion.**

On January 2, 2012, prior to Claimant's alleged disability onset date of July 1, 2012, Dr. Lavoie, an orthopedic surgeon, completed a "Medical Source Statement – Physical" (the "Opinion") essentially opining Claimant is unable to perform sedentary work. R. 309-11. The ALJ assigned the Opinion little weight, primarily due to the improvement Claimant experienced after back surgery performed by Dr. Lavoie on March 12, 2013. R. 21. Claimant argues the ALJ "did not provide enough reasoning" to assign the Opinion little weight. Doc. No. 22 at 24. Further, Claimant argues treatment records post-dating her surgery demonstrate she "continued to have problems with her back[.]" *Id*. at 24-25 (citing R. 971-73, 1,082). The Commissioner argues the ALJ articulated good cause supported by substantial evidence to assign the Opinion

little weight. *Id*. at 29-32.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity ("RFC") and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding;

or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

On November 28, 2011, Claimant began treating with Dr. Lavoie complaining of back pain. R. 321-22.[1] On examination, Claimant had full range of motion in her neck, diffuse tenderness and pain in her lower back, negative straight leg raises, and no complaints of numbness or tingling in her lower extremities. *Id*. at 322. The initial impression was spinal spondylolisthesis at L4-5. *Id*. at 321.

On January 2, 2012, Dr. Lavoie issued his Opinion. R. 309-11. In it, Dr. Lavoie indicated Claimant suffers from spinal stenosis and spinal spondylolisthesis at L4-5, and the pain associated with those impairments is aggravated by daily activities, including walking and standing. R. 309. Dr. Lavoie opined Claimant can sit for two (2) hours in an eight-hour work day, and stand/walk for two (2) hours in an eight-hour workday. R. 310. Dr. Lavoie opined Claimant requires a job that permits her to shift positions at will. *Id*. Dr. Lavoie opined Claimant can occasionally lift/carry less than ten (10) pounds, and rarely lift/carry ten (10) pounds. *Id*. Dr. Lavoie opined Claimant can occasionally twist, and rarely stoop, crouch/squat, climb ladders, and climb stairs. *Id*. Dr. Lavoie opined Claimant also experiences depression and anxiety, and, as a result, is only capable of low stress jobs. R. 311. Dr. Lavoie opined Claimant would be absent from work for more than four (4) days each month due to her impairments. *Id*.

Claimant treated with Dr. Lavoie on several occasions following his Opinion, but before her back surgery. On January 5, 2012, Claimant appeared for a follow-up. R. 317-18. Dr. Lavoie reviewed Claimant's MRI, which revealed moderate spinal stenosis at L4-5. R. 317. The impression was spinal stenosis L4-5, spinal spondylosis, and facet arthritis. *Id*. Thereafter,

---

[1] Claimant also complained of knee pain, but was treated by Dr. Mark Hollmann for her knee pain. *See generally* R. 315-22.

Claimant underwent a series of epidural injections with some initial success. R. 315. On February 1, 2013, Claimant complained that the injections were no longer effective, and that her pain was aggravated by daily activities, such as standing and walking. R. 899. On examination, Claimant had normal gait, no edema, negative straight leg raises, and some reduced range of motion. R. 900-01. The impression was lumbosacral spondylosis and spondylolisthesis. R. 901. Claimant treated with Dr. Lavoie on several more occasions between February 1, 2013 and March 12, 2013, the date of her back surgery. R. 889-95. The treatment notes from that period demonstrate a gradual worsening of her back impairments leading to reports of worsening pain. *Id*.

On March 12, 2013, approximately nine (9) months after the alleged disability onset date, Dr. Lavoie performed a MIS decompression and fusion with percutaneous pedicle screw instrumentation, interbody fusion with cage, allograft and local autograft at L4-5. R. 885, 892.

On March 27, 2013, Claimant reported she was "doing very well," she was experiencing minimal back pain and no leg pain, and she was able to increase her walking. R. 881. On examination, Claimant was in mild distress, but had not gross motor deficits, and an x-ray revealed good positioning of the hardware at L4-5. *Id*. On April 15, 2013, Claimant reported she aggravated her back while bending over. R. 879. On examination, Claimant was in mild distress, but had not gross motor deficits, and an x-ray revealed good positioning of the hardware at L4-5. *Id*. Claimant saw Dr. Lavoie on three (3) more occasions between June of 2013 and December of 2013. R. 867-70, 877-78. During these visits, Claimant reported she was "doing very well," she was experiencing minimal back pain and no leg pain, and she was able to increase her walking. R. 867, 870, 877. In December of 2013, Claimant also reported that she was experiencing minimal back pain while standing for long periods of time. R. 867. During this

period, Claimant's examinations revealed she was in mild distress, but had not gross motor deficits, and x-rays revealed good positioning of the hardware at L4-5. R. 867, 870, 877.

On July 24, 2014, Claimant presented to Dr. Lavoie complaining of a constant "boring pain" in her lumbar spine. R. 971. Claimant reported the pain is aggravated by daily activities. *Id.*[2] On examination, Claimant had tenderness in the paraspinous, mild muscle spasms, left and right lateral flexion was limited to twenty-five (25) degrees, and pain with forward flexion past forty (40) degrees. R. 972-73. The examination also revealed a normal gait, no edema, negative straight leg raises, and good positioning of the hardware at L4-5. *Id.* The impression was lumbosacral spondylosis, back pain, lumbago, and thoracic pain. R. 973. Dr. Lavoie noted that they will continue to treat the thoracic muscular pain conservatively, referred Claimant to physical therapy, and encouraged her to increase activities as tolerated. R. 974.[3]

At step two of the sequential evaluation process, the ALJ found Claimant suffers from the following severe impairments: anxiety; depression; cervical/lumbar degenerative disc disease; and spindle lesion of the left knee. R 13. At step four of the sequential evaluation process, the ALJ found Claimant is capable of performing light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [A] 30 minute sit/stand option; no climbing of ladder, ropes, and scaffolds; no more than occasional climbing of ramps and stairs, stooping, crouching, crawling, bending, or kneeling; is limited to simple tasks with little variation that take a short period of time to learn (up to and including 30 days); is able to relate adequately to co-workers and supervisors, but only occasional contact with the general public; and is able to deal with changes in a routine work setting.

R. 15. In reaching this RFC determination, the ALJ considered and discussed the medical

---

[2] There is no indication what Claimant's daily activities were as of July 24, 2014. R. 971.

[3] This is the last treatment note from Dr. Lavoie in the record.

evidence of record, including Dr. Lavoie's treatment notes. R. 16-21. Further, the ALJ considered Dr. Lavoie's Opinion, assigning it little weight because:

> [H]is opined severity is not supported by his own treatment records, which document an improvement in symptoms following surgery with no gross motor deficits and good position of the hardware and interbody craft, or with the other medical evidence of record.

R. 21. Accordingly, the ALJ assigned Dr. Lavoie's Opinion little weight for two reasons: 1) it was inconsistent with his treatment notes following Claimant's back surgery; and 2) it was inconsistent with other medical evidence of record. *Id*. Claimant argues these reasons are "not . . . enough" to assign Dr. Lavoie's Opinion little weight. Doc. No. 22 at 24-25.

As an initial matter, the Court finds the second reason articulated by the ALJ is conclusory, because the ALJ does not explain what other medical evidence of record is inconsistent with Dr. Lavoie's Opinion. R. 21. The Commissioner attempts to provide the explanation lacking from the ALJ's decision by highlighting portions of the medical record she (not the ALJ) maintains are inconsistent with Dr. Lavoie's Opinion. Doc. No. 22 at 30-31. However, the Court will not affirm the Commissioner's decision based on such post hoc rationalization. *See*, *e.g., Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (A court will not affirm based on a post hoc rationale that "might have supported the ALJ's conclusion.") (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). It was incumbent on the ALJ to identify the other medical evidence of record that does not support Dr. Lavoie's Opinion. *See*, *e.g., Poplardo v. Astrue,* Case No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008). That did not occur with respect to the second reason articulated by the ALJ. Therefore, the Court finds that reason does not support the ALJ's decision to assign little weight to Dr. Lavoie's Opinion.

In spite of the foregoing, the Court finds the ALJ's determination that the Opinion is inconsistent with Dr. Lavoie's treatment records post-dating Claimant's back surgery is good cause

to assign little weight to Dr. Lavoie's Opinion. To establish his or her eligibility for benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Dr. Lavoie's Opinion was offered six (6) months prior to the alleged disability onset date of July 1, 2012. R. 309-11. On March 12, 2013, approximately nine (9) months after the alleged disability onset date, Dr. Lavoie performed surgery on Claimant's back. R. 885. The ALJ did not address whether Dr. Lavoie's treatment records preceding the surgery were inconsistent with his Opinion. *See* R. 21. Instead, the ALJ found Dr. Lavoie's treatment records following Claimant's back surgery were inconsistent with his Opinion, because those records demonstrate "an improvement in symptoms following surgery with no gross motor deficits and good position of hardware and interbody craft[.]" *Id*. This finding is supported by substantial evidence, as the treatment records following Claimant's back surgery demonstrate a consistent reduction in pain and improvement in the ability to walk and stand. R. 867-70, 877-78, 881-82. The fact Claimant continued to experience some issues with her back after surgery does not undermine the ALJ's finding, especially given Dr. Lavoie's recommendations that she receive conservative treatment for her back pain, she undergo physical therapy, and she increase her activities. R. 974. In light of the foregoing, the Court finds the ALJ articulated good cause to assigned Dr. Lavoie's Opinion little weight, because Claimant failed to demonstrate the limitations in Dr. Lavoie's Opinion lasted or could be expected to last for a continuous period of not less than twelve (12) months.

### B. Weighing Other Medical Opinions.

Claimant argues the ALJ failed to weigh the opinions of Drs. Kala Haynes, Mark

Hollmann, Evans Amune, Mohamad Masri, Craig Jones, Shemin Saferall, and Nader Sawiris (collectively, the "Physicians"). Doc. No. 22 at 25-26. Claimant maintains the Physicians' "records/opinions" are "extremely important," because they "clearly document that [she] continued to experience significant problems, even after the surgery, including problems [with] other conditions besides her back." *Id*. at 26. The Commissioner argues the ALJ's decision reveals he considered the treatment records from the Physicians, and that none of the Physicians offered any opinions concerning Claimant's functional limitations. *Id*. at 32. Further, the Commissioner argues Claimant has failed to demonstrate how the Physicians' treatment records undermine the ALJ's RFC determination. *Id*.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the sequential evaluation process for determining disability. *Rosario*, 877 F. Supp. 2d at 1265. In *Winschel*, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel*, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The record does not contain any opinions from the Physicians. Indeed, Claimant fails to cite a single document from any of the Physicians that would constitute an opinion under *Winschel*.

Doc. No. 22 at 26. Thus, there were no opinions from the Physicians for the ALJ to weigh. Further, Claimant baldly argues the Physicians' "records/opinions" are "extremely important" because they demonstrate she continued to "experience significant problems" after her back surgery. *Id*. However, Claimant provides no explanation how the Physicians' treatment records undermine the ALJ's RFC determination. *Id*. In light of the foregoing, the Court finds the ALJ committed no error with respect to the Physicians.

### C. Credibility.

Claimant maintains the record demonstrates she continually complained of pain during the relevant period, and the ALJ failed to sufficiently consider those complaints in finding her testimony "not entirely credible[.]" Doc. No. 22 at 36-38. The Commissioner argues the ALJ articulated several specific reasons in support of his credibility determination, which are supported by substantial evidence. *Id*. at 40-43.

In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of

disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[4]  Thus, once the pain standard is satisfied, the issue becomes one of credibility.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id*. at 1561-62; *see also* SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id*.

Claimant contends that the ALJ's credibility determination is encompassed in the following paragraph:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

---

[4] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

> concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Doc. No. 22 at 38 (citing R. 16).  Claimant argues that credibility determination "does not offer enough reasoning to support the ALJ's determination that [she] is not credible."  *Id*. at 38-39.

The ALJ's credibility finding was not limited to the above paragraph.  Following that paragraph, the ALJ provided a more detailed explanation as to why he found Claimant's testimony not entirely credible.  The ALJ explained:

> In terms of the claimant's alleged impairments, the evidence of record documents symptoms and limitations; however, the objective medical evidence, course and frequency of treatment, and noted [activities of daily living] do not establish disabling medical determinable impairments and symptoms.

R. 16.  The ALJ subsequently provided more detail in his decision, explaining:

> In sum, the above residual functional capacity assessment is supported by the following.  First, the claimant has described daily activities, which are not entirely limited and are consistent with the [RFC] established in this decision.  At one point or another in the record, the claimant has reported the following activities: taking care of personal needs, preparing simple meals, doing household chores with breaks, driving, shopping, being able to manage finances, washing dishes, visiting with family/friends, watching television, and reading.
>
> Second, although the claimant has received various forms of treatment for the allegedly disabling symptoms (orthopedic, surgery, pain management, injections, physical therapy, primary care, medication management), which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful/relatively effective in controlling those symptoms.  Furthermore, consultative examinations do not document any objective medical findings that would prevent the claimant from performing work activity within the established RFC.
>
> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing.  It is emphasized that this

> observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's [RFC]. I note the claimant portrayed no evidence of pain or discomfort while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's [RFC].

R. 21-22 (citations omitted). Accordingly, the ALJ found Claimant's testimony not entirely credible due to her activities of daily living, the relative success of her treatments (e.g., her back surgery), the findings on examination, and Claimant's appearance and demeanor at the hearing. R. 16, 21-22. Accordingly, the ALJ articulated specific reasons in support of his credibility determination. Claimant does not directly challenge the reasons the ALJ articulated as support for his credibility finding. *See* Doc. No. 22 at 36-39.[5] The foregoing reasons are supported by substantial evidence, and support the ALJ's credibility determination. *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support). Accordingly, the Court finds the ALJ's credibility determination is supported by substantial evidence.

### D. Hypothetical Question to VE.

Claimant argues that the ALJ's hypothetical question to the VE did not properly account for the limitations in the medical opinions the ALJ failed to weigh, or those in Dr. Lavoie's opinion. Doc. No. 22 at 33-34. Consequently, Claimant argues the ALJ's determination at step five of the sequential evaluation process is not supported by substantial evidence. *Id*. The Commissioner argues the ALJ's hypothetical was consistent with his RFC determination, which was supported

---

[5] Claimant does generally argue participation in daily activities of short duration, such as housework and light cooking, does not undermine an individual's claim of disability. Doc. No. 22 at 39. However, Claimant does not specifically argue that each of the daily activities identified by the ALJ are insufficient to undermine her testimony concerning the intensity, persistence, and functionally limiting effects of her impairments. *See Id*. at 36-39.

by substantial evidence, and thus the ALJ did not error by relying on the VE's testimony in determining Claimant can perform other work in the national economy. *Id*. at 34-36.

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which is accurate and includes all of a claimant's limitations. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the ALJ need not include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

At the hearing, the ALJ posed a hypothetical question to the VE that was consistent with the ALJ's RFC determination. *Compare* R. 15 *with* R. 45-46. In response, the VE testified Claimant would not be able to perform her past relevant work, but would be capable for performing other jobs in the national economy, such as mail clerk, routing clerk, and marker. R. 46. At step five of the sequential evaluation process, the ALJ found the VE's testimony to be consistent with the Dictionary of Occupational Titles, and relied on the VE's testimony in determining Claimant can perform other work in the national economy. R. 23.

The success of Claimant's final argument is contingent upon the success of Claimant's first and second arguments. As discussed above, the ALJ committed no error with respect to the weight he assigned Dr. Lavoie's opinion, nor his consideration of the Physician's records. *See supra* at pp. 2-10. Therefore, the ALJ's hypothetical question to the VE, which is consistent with the ALJ's RFC determination, properly accounted for Claimant's functional limitations. *Compare* R. 15 *with* R. 45-46. Accordingly, the VE's testimony provided substantial evidence

that Claimant could perform other work in the national economy, and thus the ALJ did not err by relying on the VE's testimony.

### III. CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment in favor of the Commissioner and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on July 19, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Gregory J. Froehlich
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224